**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

**KURAKI AMERICA CORPORATION,**

       Plaintiff-Defendant,

  -vs-                                         Case Nos.  14-C-583
                                                                       14-C-628

**DYNAMIC INTL OF WISCONSIN, Inc.,**

       Defendant-Plaintiff.

## DECISION AND ORDER

Dynamic Intl of Wisconsin, a Wisconsin corporation, is a national importer and distributor of, among other things, CNC[1] horizontal boring mills. Dynamic is (or was) a distributor of such products for Kuraki America Corporation, an Illinois corporation. Dynamic moves for a preliminary injunction under the Wisconsin Fair Dealership Law, Wis. Stat. § 135.03. Dynamic requests an injunction that prohibits Kuraki from terminating its dealership status, requiring Kuraki to continue and extend the parties' existing supply agreement.

This action was made more complicated by the parties' procedural fencing. Kuraki struck first, filing an action for a declaratory judgment on May 20. A week later, Dynamic filed suit in Waukesha County Circuit Court, seeking immediate

---

[1] CNC stands for computer numerical control.

injunctive relief. Kuraki responded by removing that action on the basis of diversity jurisdiction. Now there are two cases instead of one, a wholly pointless result. These cases are consolidated. Fed. R. Civ. P. 42.

With regard to subject matter jurisdiction, the parties are diverse, but the Court must address the amount in controversy. 28 U.S.C. § 1332(a). Dynamic alleges that it sold an average of six Kuraki-brand machine tools per year over the past 23 years. These tools are "priced at the high end of the horizontal boring mill market – primarily retailing in the range of $650,000 to more than $1,000,000 per machine." Complaint, ¶ 9. The profit margin on selling such expensive machinery almost certainly exceeds $75,000.[2] Even so, Dynamic argues in a footnote that Kuraki failed to establish that the Court has subject matter jurisdiction because Dynamic is seeking only injunctive relief at this time. Not necessarily, because in "suits seeking the equitable remedies of an injunction or a declaratory judgment, the amount in controversy is determined by the value to the plaintiff (or petitioner) of the object of the litigation." *Am. MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004). The "value of the object of the litigation is the 'pecuniary result' that would flow to the plaintiff (or defendant) from the court's granting the injunction or declaratory judgment." *Id.* Again, the "pecuniary result" of maintaining the parties' dealership relationship exceeds

---

[2] Selling just one of the "cheaper" machines with a 25% markup would more than double the required amount.

$75,000.³  On the other hand, Dynamic stops short of directly challenging the Court's jurisdiction, likely because Dynamic doesn't want to pursue an argument that the amount in controversy cannot exceed $75,000 to a legal certainty. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 346 (1977).  At minimum, Kuraki has met its burden of showing "by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 825 (7th Cir. 2013).

A party seeking a preliminary injunction must satisfy three requirements. First, that absent an injunction, it will suffer irreparable harm prior to final resolution of its claims. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). Second, that traditional legal remedies would be inadequate. *Id.* And third, that its claim has some likelihood of succeeding on the merits. *Id.* If the moving party fails to satisfy any of these three requirements, the motion must be denied. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

Kuraki argues that Dynamic is not likely to succeed on the merits of its dealership claim because there is no "community of interest" between the parties. Wis. Stat. § 135.02(3)(a).  A community of interest is a "continuing financial interest

---

³ For similar reasons, the Court may exercise jurisdiction over Kuraki's claim for a declaratory judgment.  Even if the "value of the object of the litigation" doesn't exceed $75,000 from Kuraki's perspective, the Court has supplemental jurisdiction over the claim. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (courts may "rely on the existence of subject matter jurisdiction in one action to provide supplemental jurisdiction over claims in a related action").

between the grantor and grantee in either the operation of the dealership or the marketing of such goods or services." § 135.02(1). This definition is "vague and unhelpful" because it "permits no ready way in which to differentiate a dealership from any ordinary vendor/vendee relationship." *Frieburg Farm Equip., Inc. v. Van Dale, Inc.*, 978 F.2d 395, 398 (7th Cir. 1992). Nonetheless, cases in the Seventh Circuit have "distilled the principles underlying the Wisconsin cases, and provide that a community of interest may exist under one of two circumstances." *Id.* at 399. First, when a "large proportion of an alleged dealer's revenues are derived from the dealership," and second, when the "alleged dealer has made sizable investments (in, for example, fixed assets, inventory, advertising, training) specialized in some way to the grantor's goods or services, and hence not fully recoverable upon termination." *Id.*

Kuraki's Vice President and General Manager, Akira Kobayashi, avers that since 2009, Dynamic's sales of Kuraki products have represented, on average, no more that 5% of Dynamic's gross revenues. Kobayashi Aff., ¶ 50. Dynamic doesn't offer any evidence to counter this assertion. Instead, Dynamic lamely moves to strike this averment as "conclusory" because Kobayashi didn't include a "calculation to show how he purportedly derived the percentage." Kobayashi's calculation is obviously premised upon the data that he provided elsewhere in his affidavit. For example, Kobayashi provides the "total amount paid annually" by Dynamic to Kuraki for machines from 2009-2013, in succession: $1.3 million, 2.6 million, 8.3 million,

2.8 million, and 1.9 million. *Id.*, ¶ 47. Kobayashi also notes that Dynamic's annual sales in most years are between $75-$85 million, and that Dynamic sold $100 million worth of products in 2012. *Id.*, ¶¶ 48-49. As Kuraki helpfully explains in a footnote, assuming a 40% markup and $80 million in overall sales, Dynamic's sales of Kuraki products would only represent 3.4% of Dynamic's revenues in 2013. To the extent that these assumptions are inaccurate, it was incumbent upon Dynamic to come forward with evidence to the contrary. In the absence of such evidence, the point is made: Kuraki's business represents a very small percentage of Dynamic's overall sales. While courts are not supposed to look for a "fixed percentage" of business revenues, a "low percentage is strong evidence, evidence that might ultimately be determinative in many cases, that there is no continuing financial interest between the parties in the operation of the business and thus no community of interest." *Beloit Beverage Co. v. Winterbrook Corp.*, 900 F. Supp. 1097, 1104 (E.D. Wis. 1995) (citing *Ziegler Co. v. Rexnord, Inc.*, 407 N.W. 2d 878, 880 (Wis. 1987)).

As for the second primary factor, the Court must look for "the presence (or absence) of tangible grantor-specific financial investments made by the alleged dealer, or what some courts have referred to as 'sunk costs.'" *Bay Area Properties, Inc. v. Dutch Housing, Inc.*, 347 F. Supp. 2d 619, 623 (E.D. Wis. 2004). In this regard, Dynamic President Richard Layo states that Dynamic was required to maintain, on average, an inventory of two Kuraki boring mills during the course of the parties' relationship, storing them in a space in Long Beach, California at a cost of

$600/month. However, Kobayashi avers that Dynamic's current inventory of Kuraki machines is zero. Kobayashi Aff., ¶ 23. Again, Dynamic moves to strike this evidence, claiming that Kobayashi lacks "personal knowledge." But why? Dynamic doesn't say. These are big, expensive machines, so it stands to reason that Kobayashi would know if and when they are sold by one of Kuraki's dealers. That speculation aside, if Kobayashi is wrong about Dynamic's current inventory, it would have been easy enough for Layo to say otherwise. Instead, Layo offered a carefully-phrased declaration that is beside the point entirely. It really doesn't matter if Dynamic was "required" to maintain inventory in the past. What matters is if Dynamic made an "unrecoverable" investment in Kuraki products. Dynamic fails to establish, for example, that it has been stuck with "unsaleable inventory." *Home Prot. Servs., Inc. v. ADT Sec. Servs., Inc.*, 438 F.3d 716, 720 (7th Cir. 2006). Nor does Dynamic establish that its storage facilities (both here and in California) are unusable with respect to other product lines. Working through Dynamic's evidence gives the distinct impression that Dynamic is trying to hide the ball from the Court.

Layo also notes that Dynamic provided five of its employees with five-plus years of experience so they can trouble-shoot Kuraki-related maintenance problems. Moreover, Layo asserts that it will still have to service the more than 150 Kuraki machines that it has sold, a significant commitment given that the expected life of a Kuraki machine is approximately twenty years. As an initial matter, the Court presumes that these employees aren't rendered useless outside of the Kuraki

relationship. In any event, Layo concedes that providing these services going forward will help Dynamic maintain relationships with other customers. Layo Decl., ¶ 21 ("Dynamic will still have to service . . . Kuraki machines that it has sold *in order to maintain the ability to sell other machine tools to its customers that currently have Kuraki machines*") (emphasis added). Thus, the ongoing investment in servicing Kuraki products isn't grantor-specific.[4]

In deciding whether there exists a "community of interest," the "ultimate question is whether the grantor has the alleged dealer 'over a barrel' – that is, whether it has such great economic power over the dealer that the dealer will be unable to negotiate with the grantor or comparison-shop with other grantors." *Home Prot. Servs.*, 438 F.3d at 720. The foregoing analysis demonstrates that Kuraki does not have Dynamic "over a barrel." According to its own website, Dynamic is a "national distributor of vertical & horizontal machining centers, CNC lathes, vertical turning lathes, horizontal boring mills, large gantry machines, high speed 5-axis machinery, bridge and floor type mills, and gun drills."[5] Aside from Kuraki-brand products, Dynamic is a distributor for six other machine tool brands: OKK, Dynamic Speed, Samsung, HNK, Sigma, and IMSA. By contrast, Kuraki imports and sells only the Kuraki brand. Dynamic has far more bargaining leverage than it has represented to

---

[4] Kuraki also notes that customers will have to pay for post-warranty services, making such service a continuing source of revenue, not a sunk investment.

[5] http://www.dynamicintl.com/about/

the Court. Termination may harm Dynamic's bottom line, but it will not impose "severe economic consequences." *Frieburg Farm*, 978 F.2d at 399.

Regarding irreparable harm and inadequate legal remedies, the WFDL "presumes that a dealer has been irreparably harmed when the dealer seeks to preliminarily enjoin a grantor's alleged violations of the statute." *Girl Scouts*, 549 F.3d at 1094 (citing § 135.065, Wis. Stats.). Even if this presumption is "irrebuttable," Dynamic failed to satisfy the closely-related requirement that its legal remedies are inadequate. *Id.* at 1095. There are four general circumstances where "an award of money damages at the end of trial will be inadequate, . . ." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). First, the "damage award may come too late to save the plaintiff's business." *Id.* Obviously, that isn't the case here. Dynamic is a profitable, going concern with numerous clients. It is true that a "longstanding business often has a vested interest in continuing that business, not simply in receiving the monetary equivalent of its operation." *Girl Scouts* at 1095. This type of argument is undermined by the broad nature of Dynamic's business. Dynamic sells machine tools, not just Kuraki machine tools. Second, damages are inadequate if the plaintiff cannot finance his lawsuit "without the revenues from his business that the defendant is threatening to destroy." *Id.* Again, for obvious reasons, no. Third, damages "may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Id.* Kuraki, like Dynamic, has been in existence for more than 20

years, and there is no evidence suggesting that Kuraki might go out of business in the foreseeable future.  Fourth, legal remedies are inadequate if the "nature of the plaintiff's loss" make damages "very difficult to calculate." *Id.*  Dynamic's losses can easily be calculated in terms of lost profits.[6]

Finally, the Court notes that Dynamic's request for a preliminary injunction would fail even if it survived the "threshold stage" of the analysis.  At the so-called "balancing stage," the Court must "somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest.'" *Girl Scouts* at 1086.  In other words, the Court weighs the irreparable harm that the moving party would endure in the absence of an injunction against any irreparable harm the nonmoving party would suffer in the injunction was granted.  *Id.*  Given the very small percentage of Kuraki sales in relation to overall revenues, Dynamic is unlikely to win on the merits.  Therefore, the balance of harms must weigh "heavily" in Dynamic's favor, but it doesn't.  *Id.*  If anything, Kuraki is more likely to be irreparably harmed because it is a smaller company with less economic power than Dynamic.

---

[6] Assuming, as seems likely, that the "presumption of irreparable harm" is rebuttable, the foregoing analysis rebuts the presumption. *S&S Sales Corp. v. Marvin Lumber & Cedar Co.*, 435 F. Supp 2d 879 (E.D. Wis. 2006); *see also Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh Products Co., Inc.*, 255 F.3d 460, 463 (7th Cir. 2001) ("because Tecumseh parts are only a small part of Praefke's business (about 13 percent of its total sales revenues . . .), Praefke's profits have not fallen to a point that threatens its solvency.  Its losses are purely financial, easily measured, and readily compensated.  There is therefore no showing of irreparable harm, . . .).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. These cases (Nos. 14-C-583 and 14-C-628) are **CONSOLIDATED**. All further filings will be docketed in the lower case number. Civil L.R. 42(b);

2. Dynamic's motion for leave to file the Declaration of Chris J. Trebatoski [ECF No. 18] is **GRANTED**;

3. Kuraki's unopposed motion for leave to file a sur-reply brief [ECF No. 22] is **GRANTED**;

4. Dynamic's motion to strike [ECF No. 12] is **DENIED**; and

5. Dynamic's motion for a preliminary injunction [ECF No. 5] is **DENIED**.

Dated at Milwaukee, Wisconsin, this 24th day of June, 2014.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**